UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Daniel J. LeBlanc, Sr.

   v.                                   Civil No. 12-cv-84-JL

Richard M. Gerry,
Warden, New Hampshire
State Prison, et al.

**REPORT AND RECOMMENDATION**

Pro se plaintiff Daniel LeBlanc ("LeBlanc") an inmate at the New Hampshire State Prison ("NHSP"), has brought this civil rights action pursuant to 42 U.S.C. § 1983 to redress injuries he sustained following an assault by another inmate. His complaint (doc. no. 1) is before the court for preliminary review. See 28 U.S.C. § 1915A(a); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

**Discussion**

I. Standard of Review

Pursuant to LR 4.3(d)(2) and 28 U.S.C. § 1915A(a), the magistrate judge reviews the initial filings of all prisoners to determine whether to direct that the complaint be served, whether to grant plaintiff leave to amend the complaint, or whether to recommend dismissal if: the court lacks subject

matter jurisdiction; a defendant is immune from the relief sought; or the complaint is frivolous, malicious or fails to state a claim upon which relief may be granted.  In conducting that preliminary review, the court construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals, and applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6).  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Castro v. United States, 540 U.S. 375, 381 (2003).  To determine if the complaint states a cognizable claim, the court accepts as true the factual allegations and all reasonable inferences drawn therefrom, even if "seemingly incredible," Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011), and then determines whether those allegations "state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-80 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," without considering the likelihood of success on the merits.  Iqbal, 556 U.S. at 679; see also

Ocasio-Hernández, 640 F.3d at 12-13 (explaining limits of court's discretionary review).

## II. Background

LeBlanc was assaulted by another inmate in the "Residential Treatment Unit" ("RTU") at the NHSP and sustained serious injuries as a result. Along with his complaint, LeBlanc included photographs (with dates) of his wounds and copies of the indictments that charged the other inmate with assault, although the charges were ultimately nol prossed because the inmate was determined not to be competent to stand trial. LeBlanc now contends that the assault was the result of the NHSP's deliberate indifference to his need for protection, and further asserts that the NHSP has attempted to cover up the incident. In support of his claims, LeBlanc alleges the following facts.

### A. The Assault and Threats

LeBlanc was already an inmate in the RTU when the inmate who assaulted him, "I.P.," arrived on that unit. According to LeBlanc, the prison originally placed I.P. in the Secure Psychiatric Unit ("SPU"), but transferred I.P. into RTU after he sexually assaulted a female SPU staff member.

One day, LeBlanc was sitting in a chair when I.P. suddenly came up from behind him and sliced his face. LeBlanc jumped up and wrestled I.P. to the floor. Thinking the assault had ended, LeBlanc let go of I.P., but I.P. assaulted him again. LeBlanc tripped over a chair and fell to the floor, which enabled I.P. to kick LeBlanc in the face and head while LeBlanc lay bleeding, unable to defend himself. LeBlanc alleges that staff members watched the violent encounter from behind a locked door, unable to intervene because a computer malfunction prevented them from opening the door, and no one had a key. LeBlanc also contends that "[a]ll of the staff knew about the malfunctioning lock but had neglected to get it fixed.

Following the assault, I.P. was moved to the Secure Housing Unit ("SHU") at NHSP, but was quickly transferred back into SPU because he threatened to commit suicide. LeBlanc contends that as an inmate in SPU, I.P. was allowed to use the day room, through which LeBlanc had to walk to get his meals. When I.P. saw LeBlanc, I.P. threatened LeBlanc verbally and "made slashing gestures across his throat." LeBlanc alerted the staff to the threats, but nothing was done. Eventually I.P. was moved to a cell in the infirmary, but continued to taunt LeBlanc by yelling his name, calling him a rat, and generally threatening to

"endanger [LeBlanc's] life" in the general population.  Again LeBlanc told NHSP staff members about I.P., but nothing was done for weeks.  Eventually two officers heard I.P. yelling at LeBlanc and apparently succeeded in getting I.P. to stop.

LeBlanc claims that he has endured both physical pain and mental anguish, including nightmares and post-traumatic stress disorder ("PTSD"), from I.P.'s assault and threatening behavior. LeBlanc contends the prison violated its own policy by transferring I.P. without first assessing I.P.'s suicidal and homicidal behavior, as well as his disciplinary infractions.[1] Prior to assaulting LeBlanc, I.P. had assaulted two other individuals at the prison, including the female SPU staff member.  Leblanc asserts that the prison should never have placed I.P. in RTU, and that several officers objected to I.P.'s transfer from SPU into RTU because he was known to be violent. Leblanc argues that the fact that I.P. was found incompetent to stand trial on the assault charges establishes that I.P should never have been transferred into RTU.

---

[1] LeBlanc cites New Hampshire Department of Corrections Policy and Procedure Directive 6.32 in support of this contention.

### B. The Cover Up

LeBlanc asserts that the NHSP has attempted to cover up the assault. To support this assertion, LeBlanc submits that the indictments charging I.P. with assault described the two incidents as involving punching and kicking, rather than "slicing up [his] face and neck." LeBlanc also claims that his medical file contains nothing to document that the assault occurred, and that the photographs depicting his wounds were intentionally misfiled in other inmate records.

### C. Claims

Liberally construing the complaint, the court finds that Leblanc intends to assert the following claims:

1. Failure to protect from harm in violation of the Eighth Amendment, based upon I.P.'s assault and threatening behavior following the assault;

2. Negligence claim for failure to protect based upon I.P.'s assault; and

3. Conspiracy to cover up the assault.

LeBlanc asserts these claims against seven named defendants: NHSP Warden Richard Gerry; SPU/RTU Lieutenant Paul Casio; SPU/RTU administrator Kevin Stevenson; NHSP "Medical Director of Forensic Services" Anthony Ramirez; NHSP psychiatric nurse

practitioner Emily Bryant; SPU/RTU nurse Janis Phelps; and RTU psychiatric social worker Terisa Quint.

III. Analysis

    A.  Eighth Amendment Claims

LeBlanc's claims about the failure to protect him from I.P. arise under the Eighth Amendment's guarantee that prisoners shall not be subjected to cruel and unusual punishment. See Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009) (quoting Farmer, 511 U.S. at 828). Prison officials have a "constitutional duty 'not to be deliberately indifferent to the risk to prisoners of violence at the hands of other prisoners.'" Mosher, 589 F.3d at 493 (quoting Burrell v. Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002)); see also Calderón-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 63-64 (1st Cir. 2002) (allowing Eighth Amendment claim where prison officials failed to protect inmate from attack by other inmates).

An Eighth Amendment claim for failure to protect has both an objective and a subjective component. See Mosher, 589 F.3d at 493; Calderón-Ortiz, 300 F.3d at 64. The complaint must

first allege inadequate conditions that are "objectively, sufficiently serious," which means the conditions of confinement posed a "substantial risk of serious harm." See id. (quoting Farmer, 511 U.S. at 833. With respect to the second component, the complaint must allege facts demonstrating that defendants had a "sufficiently culpable state of mind," which is one of "'deliberate indifference' to an inmate's health or safety." Calderón-Ortiz, 300 F.3d at 64 (quoting Farmer, 511 U.S. at 834). Deliberate indifference requires a showing that the prison official was subjectively aware of a substantial risk of serious harm to an inmate. Farmer, 511 U.S. at 828-29.

   1.  The Assault

LeBlanc's first claim for failure to protect is based on the assault by I.P. The photographs of LeBlanc's wounds, the indictments of I.P., and the allegations in the complaint readily demonstrate that the assault LeBlanc endured was "objectively, sufficiently serious" to support a claim for relief. Id. at 834; see also Calderón-Ortiz, 300 F.3d at 64 (holding that inmate's allegation of violent assault on him satisfied objective component).

LeBlanc has also alleged sufficient facts to demonstrate that officials at the NHSP were subjectively aware of the

substantial risk of serious harm caused by the decision to move I.P. into RTU.  LeBlanc alleges that officials knew I.P. had sexually assaulted a staff member in SPU, that the transfer violated prison policy precluding the transfer of prisoners with a history of violence, and that I.P. had assaulted two people before he assaulted LeBlanc.  Several NHSP officers allegedly objected to the transfer because of I.P.'s violence.  Further, LeBlanc contends that NHSP officials knew that the computerized lock on the door the officers used to access the inmates was malfunctioning, but had neglected to get it fixed and did not provide on-duty officers with a back-up key.

Accepting these allegations as true, as is required at this stage of the proceedings, they suffice to demonstrate that NHSP officials were aware of facts sufficient to give rise to the inference that a substantial risk of serious harm to inmates in on RTU existed when they moved I.P. into RTU.  LeBlanc, therefore, has stated facts to support a plausible claim for deliberate indifference.  See Farmer, 511 U.S. at 837-38 (finding deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety"); Calderón-Ortiz, 300 F.3d at 65-66 (finding culpable state of mind sufficiently pled where inmates housed without regard to

9

security and custody needs and without supervision); cf. Burrell, 307 F.3d at 8-9 (finding no indifference to risk of inmate violence given information known about the plaintiff's ability to defend himself).

LeBlanc, however, has not alleged any facts that specify the role of any of the seven named defendants in the asserted violation of his rights. For instance, the complaint does not identify which individual(s) made the decision to move I.P. from SPU into RTU, or what they knew about I.P.'s propensity for violence. The complaint also fails to specify which NHSP officials watched the assault from behind the locked door, or whether those same officials were responsible for ensuring access to, and control over, the inmates. The complaint also does not allege which defendants knew that the computer-lock did not work, or who was responsible for getting it repaired. The complaint, therefore, does not adequately allege facts to show which defendants were deliberately indifferent to LeBlanc's need for protection.

Accordingly, LeBlanc will be granted leave to amend his complaint: (1) to identify which particular defendant or defendants he wishes to assert this claim against; (2) to state, with specificity, what facts support the assertion that each

identified defendant had an actual awareness of I.P.'s propensity for violence and the risk he presented to LeBlanc's safety; and (3) to state what each identified defendant did, or failed to do, that resulted in the denial of LeBlanc's right to protection.

### 2. The Threats

LeBlanc's second failure to protect claim is based upon the threats I.P. made following the assault.  Accepted as true, I.P.'s taunting both harassed and scared LeBlanc, which significantly traumatized him.  LeBlanc, however, has failed to allege any facts that demonstrate those threats were ever acted upon, that he was actually at risk of injury during the time the threats were occurring, or that some actual physical injury resulted.  LeBlanc alleges I.P. badgered him for several weeks, and that LeBlanc's complaints were "to no avail, until two officers heard [I.P.] doing it."  These allegations give rise to the reasonable inferences that the NHSP in fact prevented I.P. from actualizing his threats.  Further, once two NHSP officials heard the intimidating remarks, they took action to end them.  LeBlanc has failed to allege sufficient facts to demonstrate either that I.P.'s threats were "objectively, sufficiently serious" or that NHSP officials were deliberately indifferent to

any serious risk to LeBlanc's health or safety arising from the threats.  See Mosher, 589 F.3d at 493; see also Moore v. Monahan, 428 F. App'x 626, 628 (7th Cir. 2011) (dismissing claim based on threats because "fear of harm by itself is not enough to support a constitutional claim").

### B.  Negligence Claim

LeBlanc asserts a state law negligence claim based upon the alleged failure to protect him from I.P.'s assault.  For the reasons his Eighth Amendment claim is plausible, LeBlanc's negligence claim is also plausible.  See Murdock v. City of Keene, 137 N.H. 70, 72-73, 623 A.2d 755, 756-57 (1993) (breach of jailer's duty to protect inmate occurs where jailer recklessly disregards inmate's need for safety).  Like the Eighth Amendment claim, however, LeBlanc has not specified how any named defendant was involved in the incident.  Accordingly, LeBlanc will be given leave to amend his complaint to identify the defendant(s) against whom he intends to pursue this claim.

### C.  Cover Up Claim

Finally, LeBlanc claims that NHSP officials attempted to cover up the assault, but it is unclear what rights LeBlanc asserts were violated by the alleged cover-up.  Even if the

complaint were construed as alleging an agreement among the defendants to cover up the assault, LeBlanc has failed to state a cognizable claim.  See Thore v. Howe, 466 F.3d 173, 178-79 (1st Cir. 2006) (dismissing conspiracy claim where no "deprivation of a right secured by the Constitution or laws" alleged).

Based on the complaint's allegations, criminal proceedings were brought against I.P., and LeBlanc was protected from any further harm from I.P.  To the extent LeBlanc believes the charges against I.P. should have been handled differently, his dissatisfaction does not give rise to any claim cognizable under the Constitution or state law.  See e.g. Leeke v. Timmerman, 454 U.S. 83, 85-86 (1981) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)); Nieves-Ramos v. Gonzalez-De-Rodriguez, 737 F. Supp. 727, 728 (D.P.R. 1990) ("a private citizen lacks a judicially cognizable interest in the prosecution or non prosecution of another" (quoting Linda R.S., 410 U.S. at 619)). Accordingly, LeBlanc's claim alleging that his rights were violated by a cover up of the assault should be dismissed.

**Conclusion**

For the reasons set forth above, the Eighth Amendment claim alleging a failure to protect LeBlanc from I.P.'s threats and the claim alleging a prison cover-up should be dismissed from this action. In an order issued simultaneously herewith, LeBlanc is granted leave to amend his complaint to identify those defendants against whom he intends to pursue his Eighth Amendment and negligence claims for failing to protect him from I.P.'s assault, and to demonstrate that those defendants acted with deliberate indifference to, and reckless disregard for, LeBlanc's need for protection.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district

court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

June 21, 2012

cc: Daniel LeBlanc, pro se

LBM:jkc