UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Daniel J. LeBlanc, Sr.

    v.                                    Civil No. 12-cv-84-JL

Kevin Stevenson, Paul Cascio,
Teresa Quint, Anthony Ramirez,
and Emily Bryant


**REPORT AND RECOMMENDATION**

    Daniel LeBlanc, who was an inmate in the New Hampshire State Prison for Men ("NHSP") at all times relevant to this matter, has sued five NHSP employees. He asserts that they violated his rights under the Eighth Amendment to the United States Constitution, and are liable to him for negligence under the common law of New Hampshire. His claims arise out of injuries he received when he was attacked by another inmate who was incarcerated with him in the NHSP's Residential Treatment Unit ("RTU"). Before me for a report and recommendation are a motion for summary judgment filed by Kevin Stevenson, Paul Cascio, and Teresa Quint, in which Anthony Ramirez and Emily Bryant join, and a second motion for summary judgment filed by Ramirez and Bryant. LeBlanc has not objected to either motion. For the reasons that follow, I recommend that the court: (1)

grant summary judgment to all five defendants on LeBlanc's federal claims; and (2) decline to exercise supplemental jurisdiction over LeBlanc's state-law claims.

**Summary Judgment Standard**

"Summary judgment is warranted where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" McGair v. Am. Bankers Ins. Co. of Fla., 693 F.3d 94, 99 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a); citing Rosciti v. Ins. Co. of Penn., 659 F.3d 92, 96 (1st Cir. 2011)). "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)). "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted). "The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 9

(1st Cir. 2012) (quoting <u>Iverson v. City of Boston</u>, 452 F.3d 94, 98 (1st Cir. 2006)).

**Background**

Because LeBlanc has not objected to either of the two pending summary-judgment motions, "[a]ll properly supported material facts set forth in [defendants'] factual statement[s] shall be deemed admitted." LR 7.2(b)(2). For the purposes of recommending a disposition of the pending motions, the following facts are deemed admitted.

On September 15, 2010, while LeBlanc was housed in the RTU, he was assaulted by Ivan Pickens, who was assigned to the same housing unit. Approximately three minutes after correctional officers outside the unit first observed the altercation between LeBlanc and Pickens, the fight had been broken up and LeBlanc was receiving medical treatment.

LeBlanc is now suing five defendants who, at the time of his altercation with Pickens, were employed by the NHSP either as correctional officers or as providers of mental-health care in the RTU. He asserts two federal claims and two claims under state law. In his federal claims, brought through the vehicle of 42 U.S.C. § 1983, LeBlanc asserts that all five defendants violated his rights under the Eighth Amendment prohibition of

cruel and unusual punishment by: (1) placing him in the same housing unit as Pickens, who had a history of assaultive behavior and mental-health issues that made him a danger to other inmates (hereinafter "housing claim"); and (2) failing to correct or otherwise address a malfunction in the computer-operated locking mechanism of the door to the RTU, which delayed the correctional officers who came into the RTU to protect him from Pickens' assault (hereinafter "door claim"). LeBlanc's state-law claims are based upon the same conduct, and in them, he asserts that all five defendants are liable to him for negligence.

**Discussion**

A. LeBlanc's Eighth Amendment Claims

Defendants are entitled to dismissal of LeBlanc's housing claim because he has not exhausted the administrative remedies available to him at the NHSP, and they are entitled to judgment as a matter of law on the merits of LeBlanc's door claim. The court considers each claim in turn.

1. The Housing Claim

Both sets of defendants argue that they are entitled to dismissal of the housing claim and the door claim due to

LeBlanc's failure to satisfy the exhaustion requirement of the Prison Litigation Reform Act of 1995 ("PLRA"). As to LeBlanc's housing claim, they are correct.

According to the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Moreover, as the United States Supreme Court has explained:

> Exhaustion is [not] left to the discretion of the district court, but is mandatory. See Booth v. Churner, 532 U.S. 731, 739 (2001). Prisoners must now exhaust all "available" remedies, not just those that meet federal standards. Indeed, as we held in Booth, a prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process. Id., at 734.

Woodford v. Ngo, 548 U.S. 81, 85 (2006) (parallel citations omitted); see also Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.") (citation omitted). Claims for which administrative remedies have not been exhausted are subject to dismissal. See Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

"[T]he PLRA exhaustion requirement requires proper exhaustion." Woodford, 548 U.S. at 93. Proper exhaustion "demands compliance with [a penal institution]'s deadlines and other critical procedural rules." Id. at 90. To meet the requirement of proper exhaustion, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)). Procedurally, "[t]he Supreme Court . . . has held [failure to exhaust] to be an affirmative defense." Ramos v. Patnaude, 640 F.3d 485, 488 (1st Cir. 2011) (citing Jones v. Bock, 549 U.S. 199, 212 (2007)). As such, it "must be raised and proved by the defense." Cruz Berríos v. González-Rosario, 630 F.3d 7, 11 (1st Cir. 2010) (citing Jones, 549 U.S. at 216).

While LeBlanc was incarcerated at the NHSP, inmates with complaints about prison conditions were required to use a three-step grievance process that involved: (1) an inmate request slip directed to the appropriate staff member and submitted "within 30 calendar days of the date on which the event complained of occurred," Defs.' Mot. Summ. J., Pitman Aff., Ex. B (doc. no. 36-19), at 2; (2) a grievance form "directed to the Warden of

the facility in which the inmate is currently housed" and "received within 30 calendar days from the date of the response to the request slip," id. at 3; and (3) a grievance form directed to the Commissioner of the Department of Corrections and received "within 30 calendar days of the date of the response by the Warden," id. at 4.

The events giving rise to this suit took place on September 15, 2010. On March 11, 2011, LeBlanc submitted an inmate request slip to Kevin Stevenson, administrator of both the RTU and the NHSP's Secure Psychiatric Unit ("SPU"). In that slip, LeBlanc made the following request:

> I was informed that Mr. Ivan Pickens was indicted by the Merrimack County Grand Jury. I received notice of this on Feb. 15, 2011. I am now wondering what has been done to prevent this type of thing from happening again. [B]y this I mean security officers and medical staff were forced to watch the whole incident [on September 15, 2010] because they could not get the door open nor did they have a key to bypass the computer. I would also like to know why there is no record of this incident where I was sliced up and had my face kicked in in my medical record. Also staff failed to keep me safe from a well known violent individual.

Defs.' Mot. Summ. J., Pitman Aff., Ex. A (doc. no. 36-18), at 2. Stevenson responded:

> Due to the ongoing case, I must refer you to direct these questions to either the Merrimack County

7

    Attorney's Office or the N.H. Attorney General's office.

Id.

    On March 27, 2011, LeBlanc directed the following grievance to the Warden of the NHSP:

> I wrote to Kevin Stevenson Admin. RTU/SPU (copy attached). His response did not answer my questions. I was savagely attacked, sliced up and had my face kicked in. The person who did this has been indicted and I wrote to find out why this assault is not reflected in my medical record and what's been done to prevent this from happening to someone else. Staff watched this happen because they could not get the door open to get in and stop the assault. Staff failed to keep me safe. What is being done to fix this?

Defs.' Mot. Summ. J., Pitman Aff., Ex. A (doc. no. 36-18), at 8.

The Warden responded:

> I have been advised that the problems you identified with the door have been repaired.

Id.

    Dissatisfied with that response, LeBlanc directed the following grievance to the Commissioner of the New Hampshire Department of Corrections:

> I was attacked in the RTU/SPU unit. I was slice[ed] on my face and neck and have permanent scarring. I wrote to Kevin Stevens[on] and asked if anything had been done to make sure this couldn't happen to someone else because they could not get the door open and stop the attack and I also asked why this attack was not reflected in my medical record. I got a response that did not answer the questions. See attached. So I

>  wrote to the Warden and got no response at all.  Now I
>  am writing to you in hopes that you can answer these
>  questions.  I also intend to seek damages.

Defs.' Mot. Summ. J., Pitman Aff., Ex. A (doc. no. 36-18), at 9.

The record also includes an undated letter, in what appears to be LeBlanc's handwriting, that the court presumes to have been sent to the Commissioner.  That letter states, in pertinent part:

> I was in the RTU/SPU and while there I was savagely
> attacked by another inmate.  His name was Ivan
> Pickens.  [H]e snuck up behind me and sliced my face
> and neck multi[p]le times and when I hit the floor he
> proce[e]ded to kick in my face.  This was completely
> unprovoked.  I wrote to Kevin Stevenson and asked what
> was being done to prevent this from happening to
> someone else in RTU (see attached) and also why this
> attack was not reflected in my medical records.  [H]is
> response (see attached) had nothing to do with what I
> asked.  I then sent a grievance to Warden Gerry (see
> attached) and got no response at all.  I am now
> writing to you in hopes to get some answers.  I have
> scars on my face and neck that are for life.  Security
> staff and nursing had to watch this whole attack
> happen because they could not get the door to RTU's
> cell block open by the computer and nobody had the key
> in their possession.  [A]lot of the damage to my face
> and to my mental state could have been prevented and I
> fully intend to seek damages.

Id. at 10.  The Commissioner responded to LeBlanc's grievance as follows:

> Questions regarding security mechanisms cannot be
> answered due to the confidential nature of the answer.
> If there was a problem it would be properly addressed.

Id. at 9.

While LeBlanc arguably complained about Pickens' assignment to the RTU in the last sentence of his inmate request slip, neither the grievance LeBlanc submitted to the Warden nor the grievance he submitted to the Commissioner "provide[d] enough information about [Pickens' assignment to the RTU] to allow prison officials to take appropriate responsive measures [with respect to that issue]." Pierce v. Hillsborough Cty. Dep't of Corr., No. 06-cv-422-SM, 2008 WL 215716, at *4 (D.N.H. Jan. 24, 2008) (quoting Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004)).[1]  Thus, at the time he filed this action, LeBlanc had not properly exhausted the administrative remedies applicable to his Eighth Amendment claim that defendants subjected him to cruel and unusual punishment by assigning him to the same housing unit as Pickens.  Accordingly, all five defendants are entitled to dismissal of that claim.  See Medina-Claudio, 292 F.3d at 36.

---

[1] Given that LeBlanc is seeking monetary damages, a responsive measure that could not have been provided by the NHSP's grievance process, he could have concluded that it was futile to file a grievance on his housing claim.  However, the PLRA requires exhaustion even under such circumstances, see Woodford, 548 U.S. at 85, and "there is no 'futility exception' to the PLRA exhaustion requirement," Media-Claudio, 292 F.3d at 35 (quoting Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000); citing Booth, 532 U.S. at 741).

### 2. The Door Claim

While LeBlanc has not exhausted his administrative remedies with regard to his housing claim, his door claim stands on a different footing.  Defendants argue that: (1) the incident on which LeBlanc bases his door claim took place on September 15, 2010; (2) prison regulations gave him thirty calendar days to file an inmate request slip based upon that incident; (3) he filed his inmate request slip addressing the allegedly faulty RTU door in March of 2011, long after the deadline for doing so had passed; and (4) because the PLRA requires proper exhaustion, the untimely submission of his request slip rendered his use of the NHSP grievance process ineffective for purposes of exhaustion.

The problem with that argument is that, notwithstanding the untimeliness of LeBlanc's inmate request slip, Stevenson did not reject it on grounds that LeBlanc had failed to follow the regulations governing the NHSP grievance process.  Thus, it is difficult to say that LeBlanc's attempt to exhaust his administrative remedies was not proper.  As Judge Laplante has recently explained:

> [T]he court recognizes that a prison that considers the substance of an untimely filed complaint and decides it on the merits may arguably be deemed to have waived its right to argue a failure-to-exhaust

11

> defense.  See Patel v. Fleming, 415 F.3d 1105, 1111 (10th Cir. 2005); Pozo, 286 F.3d at 1025 (noting that a prison's acceptance of an untimely complaint "makes the filing 'proper' for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court"); Ellis v. Vadlamudi, 568 F. Supp. 2d 778, 785 (E.D. Mich. 2008) (equating waiver to the procedural default doctrine utilized in habeas cases). But such waiver applies only to those portions of an untimely complaint that the prison considered and decided on the merits.  See Patel, 415 F.3d at 1111 (holding that prison did not waive its failure-to-exhaust defense where it rejected the inmate's untimely complaint on procedural, as opposed to substantive, grounds).

Ellison v. N.H. Dep't of Corr., No. 07-cv-131-JL, 2009 WL 424535, at *4 n.6 (D.N.H. Feb. 19, 2009).  Because Stevenson, the Warden, and the Commissioner all reached the merits of LeBlanc's complaint about the door to the RTU, the court cannot conclude that LeBlanc failed to exhaust his administrative remedies with respect to his door claim.

In addition to arguing that LeBlanc failed to exhaust the administrative remedies available to him, both sets of defendants argue, for different reasons, that they are entitled to judgment as a matter of law on LeBlanc's door claim.  They are correct.

In my report and recommendation dated August 16, 2012, I described the elements of the claim LeBlanc seeks to prove:

> In order to assert an Eighth Amendment claim against a specific defendant, LeBlanc must assert facts to

12

> demonstrate that the defendant acted in a manner that
> subjected [him] to a substantial risk of serious harm,
> and that the defendant did so with deliberate
> indifference to [his] health or safety.  See Mosher v.
> Nelson, 589 F.3d 488, 493 (1st Cir. 2009).
> Specifically, LeBlanc must assert facts, of which a
> defendant was aware, that gave rise to an inference
> that a substantial risk of serious harm to [him]
> existed, that the defendant drew the inference, and
> that the defendant failed, by act or omission, to take
> reasonable steps to ameliorate the risk.  See Farmer
> v. Brennan, 511 U.S. 825, 828-29, 832-34 (1994);
> Mosher, 589 F.3d at 493; Ruiz-Rosa v. Rullan, 485 F.3d
> 150, 157 (1st Cir. 2007).

Doc. no. 11, at 4-5.  LeBlanc's door claim is based upon allegations that "when he was assaulted, the computer that controlled the unit door locks was broken, the unit door was locked, and no officer had a key."  Id. at 10.  I ordered that the door claim be served on all five remaining defendants, based upon LeBlanc's allegations that "every member of the SPU/RTU staff . . . was aware of these conditions, bore some responsibility to address and correct the problem, and failed to take reasonable steps to do so."  Id. at 10-11.

Ramirez and Bryant have produced undisputed evidence that: (1) neither of them had any role in the design, maintenance, or operation of the doors to the RTU, see Defs.' Mot. Summ. J., Attach. 2, Ramirez Aff. (doc. no. 38-2) ¶ 14; Attach. 3, Bryant Aff. (doc. no. 38-3) ¶ 11; and (2) neither of them was present in the RTU on the day that Pickens assaulted LeBlanc, see

13

Ramirez Aff. ¶ 15; Bryant Aff. ¶ 12.  Based upon that undisputed evidence, there is no triable issue of fact concerning the responsibility of Ramirez and Bryant for any alleged computer malfunction with the door to the RTU.  Thus, they are entitled to judgment as a matter of law on LeBlanc's door claim.

Stevenson, Cascio, and Quint mount a three-pronged defense to LeBlanc's door claim.  They argue that LeBlanc cannot prove either of his Eighth Amendment claims because he has disclosed no witness to provide the expert testimony he needs to prevail.  They invoke the doctrine of qualified immunity.  And, they contend that they are entitled to judgment as a matter of law on the merits, based upon the undisputed factual record.  Defendants' third argument is persuasive, and dispositive.

As noted, LeBlanc's door claim rests upon allegations that on the day that Pickens assaulted him in the RTU, "the computer that controlled the unit door locks was broken, the unit door was locked, and no officer had a key."  Report & Recommendation (doc. no. 11) 10.  Stevenson, Cascio, and Quint support their summary-judgment motion with evidence that "[o]n September 15, 2010 the doors [to the RTU] were electronically operational and in working order."  Defs.' Mot. Summ. J., Ex. A, Cascio Aff. (doc. no. 36-2) ¶ 18.  While LeBlanc alleged in his complaint

14

that the computer controlling the door to the RTU was broken, he has filed no objection to the summary-judgment motion filed by Stevenson, Cascio, and Quint.  Necessarily, then, he has not demonstrated, "through submissions of evidentiary quality, that a trialworthy issue [concerning the operation of the RTU door] exists," Sánchez-Rodríguez, 673 F.3d at 9.  Thus, it is undisputed that on September 15, 2010, the door to the RTU was working properly.  Beyond that, the summary-judgment record is replete with evidence that it only took a few seconds for the RTU door to open after it was activated by the control room operator, but the undisputed fact that the door was in proper working order on the day LeBlanc was attacked is all that is necessary to determine that, under his theory of the case, Stevenson, Cascio, and Quint are entitled to judgment as a matter of law on his door claim, which is based upon an allegation of a computer malfunction that they knew about but failed to address.[2]

### B. LeBlanc's State-Law Claim

In addition to asserting two claims under the Eighth Amendment, LeBlanc also asserts that all five defendants are

---

[2] This reasoning applies with equal force to Ramirez and Bryant.

liable to him for negligence, based upon their decision to place Pickens in the RTU and their failure to address the alleged malfunctioning of the door to that unit.  Stevenson, Cascio, and Quint ask the court to grant them summary judgment on LeBlanc's state-law negligence claims on grounds of sovereign immunity. Ramirez and Bryant ask the court to decline to exercise supplemental jurisdiction over those claim.  In light of my recommended disposition of LeBlanc's federal claims, I recommend that the court decline to exercise supplemental jurisdiction over his negligence claims, and dismiss them without prejudice. See 28 U.S.C. § 1367(c); see also Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).

**Conclusion**

For the reasons described above, I recommend that the court: (1) dismiss LeBlanc's Eighth Amendment housing claim, for lack of exhaustion; (2) grant all five defendants judgment as a matter of law on LeBlanc's Eighth Amendment door claim; and (3) decline to exercise supplemental jurisdiction over LeBlanc's state-law negligence claims and dismiss them without prejudice. That is, I recommend that the court should grant the two pending

summary-judgment motions, document nos. 36 and 38, and direct the clerk of the court to close the case.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

June 10, 2013

cc: Daniel J. LeBlanc, Sr., pro se
 Lynmarie C. Cusack, Esq.
 Martin P. Honigberg, Esq.
 Jonathan A Lax, Esq.